M. M. Gordon et al., v. Commissioner. [1]
Gordon v. Commissioner
Docket Nos. 20583-20591.
United States Tax Court
1950 Tax Ct. Memo LEXIS 250; 9 T.C.M. (CCH) 203; T.C.M. (RIA) 50061; March 14, 1950
*250 Respondent erred in including in the corporate assets received by petitioners upon distribution any amount for good will or going concern value with respect to the five corporations which were dissolved in the taxable years 1943 and 1944. John W. Martin, Esq., Second Nat'l Bank Bldg., Houston 2, Tex., for the petitioners. J. Marvin Kelley, Esq., for the respondent. LEECH Memorandum Findings of Fact and Opinion LEECH, Judge: These consolidated proceedings involve income tax deficiencies for the calendar years 1943 and 1944, as follows: Deficiencies
Docket No.
Petitioner
1943
1944
20583
M. M. Gordon
$10,642.13
$2,821.17
20584
Ida Gordon
10,642.13
2,821.17
20585
Aron S. Gordon
4,498.46
909.03
20586
Mrs. Aron S. Gordon
4,498.46
909.03
20587
Harry B. Gordon
8,750.93
1,233.00
20588
I. L. Miller
2,259.19
742.91
20589
Mrs. I. L. Miller
2,259.19
742.91
20590
Diana Miller
64.46
20591
Arnold Miller
64.46
The sole issue is whether the five corporations involved had good will or going concern value when dissolved in 1943 and 1944 and their assets distributed to the stockholders in complete liquidation. The cases were submitted on a stipulation of facts, oral testimony and exhibits. The stipulated facts are so found. Findings of *251 Fact The income tax returns for the taxable periods involved were filed by the respective petitioners with the collector of internal revenue at Austin, Texas. The respective dates of incorporation and dissolution, and the value of the intangible assets at the date of dissolution, as determined by the respondent, of the five corporations involved, are as follows: Alleged
Corporation
Incorporated
Dissolved
Good Will
Gordon's, 411 Travis St., Inc.
June 20, 1932
May 31, 1943
$75,000
Gordon's Loan Office, Inc.
June 20, 1932
May 6, 1944
20,000
Gordon's, Inc. of Beaumont
Sept. 20, 1934
Apr. 7, 1943
22,000
Gordon's Jewelers, Inc., Baton Rouge
Oct. 9, 1936
July 17, 1943
30,000
Gordon's Jewelers of New Orleans, Inc.
Oct. 10, 1938
July 28, 1943
30,000
In determining the deficiencies, the respondent determined the value of the intangible assets such as good will or going concern value by the use of the A.R.M. 34 formula, after making certain adjustments. With respect to Gordon's, Inc. of Beaumont, Texas, Gordon's Jewelers, Inc., Baton Rouge, Louisiana, and Gordon's Loan Office, Inc., Houston, Texas, adjustments were made to level off earnings in years where the income was abnormally high, due to war conditions. The five *252 Gordon corporations were engaged in the retail credit jewelry business. Prior to the incorporation of the principal store at 411 Travis Street, Houston, Texas, the store was operated individually by M. M. Gordon and his sons. They had many years' experience in the jewelry business as individuals, and by long hours and hard work had acquired a high reputation, wide business acquaintanceship and an unusual degree of skill and ability in buying and selling jewelry. The leases for the 411 Travis Street store were all executed in the individual name of M. M. Gordon. They ran for short periods, usually two years, and did not contain any renewal options. Some of the jewelry concerns from whom jewelry was purchased were not aware of the fact that petitioners had incorporated the business. During the war it was difficult to buy jewelry. Because of the acquaintanceship of M. M. Gordon and his sons with wholesalers and suppliers, they were able to secure articles of jewelry which were in short supply. The art of buying jewelry for resale is of the highest importance to the success of a retail jewelry business. In buying for resale it is essential not only to know jewelry and the sources of supply, *253 but to know what will sell. Years of training and experience are required to develop competent buyers in the jewelry business. M. M. Gordon and his sons had acquired the essential experience and skill required in buying jewelry. During the war years it was difficult to hire competent buyers. Normally, in the retail credit jewelry business, a high degree of ability is required in order to sell to the customer. Usually the customer does not know whether the jewelry is genuine or good, and relies upon personal confidence in the seller. The latter must know that the jewelry is genuine and convince the customer of its genuineness. M. M. Gordon and his sons personally devoted most of their time to the 411 Travis Street store. The clientele consisted principally of those in the low income group. This type of customer is normally interested in bargains and prices and shops around. The customer turnover was very high. The store's advertising consisted principally of specials and bargains designed to lure the customers into the store. Except during the war years 1942, 1943 and 1944, petitioners' business was predominantly on credit. The 411 Travis Street store was located off the main shopping *254 district. When the sale of beer was legalized in 1933, three beer bars were opened in the same block. Because of these unfavorable conditions, petitioners sought a location on Main Street in Houston, which was secured in 1939. Because a competitor was already operating a store under the name of "Gordon Jewelry Company" on Main Street, Houston, the name used for the new store was "Miller's Jewelry Company." Petitioners did not have and could not secure the fine silverware lines which are important in establishing repeat business. Prior to the war, and in preparation therefor, a large number of shipping and other industries, together with military installations, were established in and near Houston and each of the other cities where petitioners' five jewelry stores were located. As a result of these military establishments, the jewelry business was substantially benefited and increased. No amount representing good will was carried on the books of any of the five corporations. During the year 1947 petitioners received several offers to sell to them jewelry stores on the basis of the market value of (1) inventory, (2) furniture and fixtures, and (3) accounts receivable, without any consideration *255 for good will. Petitioners purchased a jewelry store in Corpus Christi and one in Dallas, Texas, for a consideration arrived at on the foregoing basis. No one of the five corporations here involved possessed any good will at the time of their respective dissolutions. The earnings from such businesses in excess of a fair return on tangible assets were attributable solely to the personal experience, ability, skill, acquaintanceship and hard work of the individuals who operated them. Opinion These consolidated proceedings present the single issue of fact whether the five corporations here involved possessed good will or going concern value at the time of their respective dissolutions. The respondent, applying a mathematical formula, [2] determined that such corporations had an aggregate good will or going concern value of not less than $177,000, which amount was received by petitioners as a liquidating dividend. Petitioners contend that the five corporations possessed no good will or going concern value in any amount. There is no specific rule for determining the existence of good will, and each case must be considered in the light of its own particular facts. *256 ; . The burden here is upon the petitioners either of showing the nonexistence of good will or that the value as ascertained by the respondent is excessive. Petitioners' proof and arguments are addressed to establishing the first alternative. They have endeavored to establish by their evidence that such success as the corporations enjoyed was due to the personal qualifications, skill, experience and individual acquaintanceship of M. M. Gordon and his sons. The corporations involved operated a retail credit jewelry business. The main store, 411 Travis Street, Houston, to which the respondent has attributed the largest amount of good will or going concern value, was incorporated in 1932. Prior thereto it had been successfully operated by M. M. Gordon, who had over 30 years' experience in the jewelry business, and his sons. Considerable evidence was presented through some of the petitioners and disinterested witnesses, which was credible and persuasive, to the effect that the success of such corporations, aside from the impetus due to the conditions resulting from the war, was primarily, if not solely, *257 due to the personal qualifications, skill, ability, experience and acquaintanceship of M. M. Gordon and his sons. We have recently recognized the rule that "Ability, skill, experience, acquaintanceship, or other personal characteristics or qualifications [of an officer or employee] do not constitute good will as an item of property; nor do they exist in such form that they could be the subject of transfer." (February 28, 1950) and cases therein cited. Furthermore the record establishes other factors which petitioners contend negative the existence of good will or going concern value. The evidence shows that the principal store, 411 Travis Street, Houston, was located off the main shopping thoroughfare; the neighborhood had deteriorated by reason of the establishment of open bar beer saloons adjacent thereto, resulting in a change in the type of customer from the middle to the lower income group; there was a competitor operating a store under the name of "Gordon Jewelry Company" two city blocks away; petitioners were unable, because of their location, to procure fine silverware lines, which are important in establishing a repeat business; its customer turnover *258 was very high; petitioners in 1947 purchased two jewelry stores on an inventory basis without the inclusion of any consideration for good will; and petitioners had received several offers to sell to them jewelry stores on a similar basis. The respondent offered no contrary proof, but relies entirely upon his mathematical formula. We have, therefore, after consideration of all the facts and circumstances, held that such corporations possessed no good will and that the earnings in excess of a fair return on tangible assets were due to factors that do not constitute items of property capable of transfer. The contention of the petitioners is sustained. Decisions will be entered for the petitioners. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Ida Gordon (Docket 20584); Aron S. Gordon (Docket 20585); Mrs. Aron S. Gordon (Docket 20586); Harry B. Gordon (Docket 20587); I. L. Miller (Docket 20588); Mrs. I. L. Miller (Docket 20589); Diana Miller (Docket 20590); Arnold Miller (Docket 20591).↩
2. 2 Cum. Bull. (1920) 31-33.↩